**COLUMBUS DIVISION OF INCOME TAX, Appellant,**

**v.**

**BOLES, Appellee.**

[Cite as *Columbus Div. of Income Tax v. Boles* (1992), 78 Ohio App.3d 617.]

Court of Appeals of Ohio,
Franklin County.

No. 91AP–907.

Decided March 10, 1992.

*Ronald J. O'Brien,* City Attorney, and *James D. Newcomer,* for appellant.

*Baker & Hostetler, Edward J. Bernert* and *George H. Boerger,* for appellee.

PETREE, Judge.

This is an appeal from the Franklin County Municipal Court, which granted judgment to E. Thomas Boles, Jr., M.D., defendant herein. The city of Columbus, Division of Income Tax, plaintiff herein, appeals and asserts the following assignments of error:

"I. The trial court committed prejudicial error in determining that income from defendant's interest in the Atlas Building was not taxable by the City of Columbus.

"II. The trial court committed prejudicial error by entering judgment for defendant and against plaintiff on plaintiff's complaint and by entering judgment against plaintiff and for defendant on defendant's counterclaim."

These two assignments of error present a single question for our review. That question is whether Columbus may tax a nonresident for limited partnership income derived from partnership business operations conducted within city limits.

Plaintiff filed a complaint on May 17, 1990 in the Franklin County Municipal Court against defendant, alleging that he failed to pay sufficient municipal income tax for the years 1986 and 1987. Plaintiff demanded judgment in the amount of $1,565.92 plus interest. Defendant answered and defended, arguing that plaintiff had no authority to tax his limited partnership income. He also counterclaimed for a refund of certain taxes previously paid for such income.

The parties submitted stipulations and the cause was tried to the court. The stipulations state that defendant is a resident of Upper Arlington, Ohio. During the years 1986 and 1987, defendant was a limited partner in several business ventures, including Atlas Building, Ltd. The principal office and location of operations of this limited partnership is in Columbus. In 1986, defendant derived $32,856 in income from his interest in Atlas Building, Ltd. In 1987, he derived $84,026 in income from it.

Given these elementary facts, the trial court held that plaintiff could not tax defendant's limited partnership income. First, the trial court decided that defendant's investment activity in a Columbus enterprise did not qualify as a taxable activity under the local tax code. Second, the trial court concluded that limited partnership income, by its very nature, is intangible income that is not subject to municipal income taxation in any event. Accordingly, the trial court entered judgment against plaintiff and for defendant.

The threshold issue in this appeal is whether the trial court erred in concluding that the language of the local income tax code precludes the taxation of defendant's limited partnership income. During the tax periods in question, the Columbus City Code Net Profits Tax, contained in Section 361.19 of the code, read:

"To provide for the purposes of general municipal operations, maintenance, new equipment, and capital improvements of the City, there is hereby levied a tax at the rate of two (2.0) percent per annum upon the following:

" * * *

"(c) Net Profits;

"(1) On the net profits earned of all unincorporated businesses, professions, or other activities conducted by residents of the City.

"(2) On the net profits earned of all unincorporated businesses, professions, or other activities conducted in the City by nonresidents.

"(3) For purposes of (c)(1) and (c)(2) above, an association shall not be taxable as an entity, but any member thereof who is a resident of the City shall be taxed individually on his entire share whether distributed or not, of the annual net profits of the association, and any non-resident member thereof shall be taxed individually only on that portion of his share, whether distributed or not, of the annual net profits of the association as is derived from work done, services performed or rendered, and business or other activities conducted in the City."

In this appeal the parties present widely disparate interpretations of this particular impost. Plaintiff emphasizes that defendant's partnership, which qualifies as an "association" under Sections 361.03 and 361.19(c)(3), was located in Columbus and did business there. Because of this, plaintiff contends that the resident partnership's net profits were taxable under Section 361.19(c)(1) and then attributable to defendant under Section 361.-19(c)(3). Contrarily, defendant contends that the foregoing provisions clearly state in Section 361.19(c)(3) that no entity tax is imposed on an association such as a partnership.[1] Rather, defendant argues that partners are taxed only for their actual personal activities in Columbus. Because defendant was merely a "passive" investor, defendant contends that he neither personally conducted any activity in Columbus nor personally conducted any business there. Hence, defendant contends that no tax can be imposed upon him.

At the outset, we note that the local income tax code is by no means a model of clarity. Like other Ohio municipalities, Columbus entered the income tax field in the 1940s after the city of Philadelphia, Pennsylvania, pioneered this area of municipal finance in 1938. See, generally, Fordham & Mallison, Local Income Taxation (1950), 11 Ohio St.L.J. 217, 220–223; Note, Municipal Personal Income Taxation of Nonresidents (1970), 31 Ohio St.L.J. 770, 785. Today, the Columbus City Code retains much of the same language as was contained in that early 1938 Philadelphia ordinance.

In *Benua v. Columbus* (1959), 170 Ohio St. 64, 9 O.O.2d 459, 162 N.E.2d 467, the Ohio Supreme Court had occasion to interpret this language in an essentially similar version of Section 361.19(c)(2) of the Columbus City Code

---

1. Defendant points out that the Columbus City Code was amended in 1990 to expressly provide in Section 361.19(c)(3) that an association shall now be taxed as an entity. See Ordinance No. 2890–90, reprinted in The City Bulletin, December 1, 1990.

Net Profits Tax. In that case, a nonresident owner of real estate, which was situated in Columbus, challenged the authority of the city to impose its municipal net profits tax on the rents the taxpayer received from the Columbus property. In addition to raising various constitutional arguments that were ultimately rejected by the court, the taxpayer also contended that simply receiving rents was not a "business" under the net profits tax. The Supreme Court rejected this contention in light of the broad definition of the term "business" in the city ordinance, which read: " * * * 'an enterprise, activity, profession, or undertaking of any nature conducted for profit or ordinarily conducted for profit.' * * * " *Id.* at 66, 9 O.O.2d at 461, 162 N.E.2d at 469.[2] The court wrote in paragraph one of the syllabus that: "Where a legislative body incorporates in an enactment definitions of words and phrases used therein, such definitions will be controlling in making a determination of the legislative intent."

While *Benua* is not entirely on point, it undoubtedly establishes that the language of the taxing ordinance itself should control our analysis here and that the relatively passive activity of receiving rent can qualify as "business" under the broadly drafted Columbus tax ordinance.

In the present case, the trial court found that receiving income from a Columbus limited partnership is not an "activity" under Section 361.19(c)(2). In addition, defendant urges on appeal that he cannot be said to have "conducted" any activity in Columbus because a limited partner, by statute, is only a passive investor with no right of day-to-day control or management responsibilities.[3]

These same arguments were raised in Philadelphia and considered by the courts there years ago. For instance, in *Freedman v. Tax Review Bd. of City of Philadelphia* (1968), 212 Pa.Super. 442, 243 A.2d 130, a resident taxpayer challenged the taxation of his limited partnership income derived from a Philadelphia limited partnership operating there. Relying on several previous cases limiting the Philadelphia ordinance to "earned" income, the appellate court held that limited partnership income was not taxable. The court reasoned that a limited partner is a passive investor who does not "earn" income.

The Superior Court's ruling in *Freedman* was appealed to the Supreme Court of Pennsylvania. In a one-sentence, *per curiam* opinion, the ruling was

---

2. This same language is now contained in Columbus City Code 361.04.

3. R.C. Chapter 1782 contains Ohio's version of the Revised Uniform Limited Partnerships Act. For a detailed analysis of this provision, see Note, H. 607: Ohio Adopts the Revised Uniform Limited Partnership Act (1985), 11 U.Dayton L.Rev. 187.

affirmed by an evenly divided Supreme Court. *Freedman v. Tax Review Bd. of City of Philadelphia* (1969), 434 Pa. 282, 258 A.2d 323. There were two separate dissenting opinions.

We do not find these Pennsylvania cases to be persuasive in the case at hand. First, the Philadelphia ordinance has received strict construction and very restrictive treatment from the courts in that state, in part because of limitations set forth in the state's amended Sterling Act, which initially allowed for municipal income taxation in 1932. Consequently, unlike Ohio courts, the Pennsylvania courts have felt constrained by principles of state preemption to create an "earned" income restriction, which in the final analysis has lead to much litigation and various restrictive holdings. See *Breitinger v. Philadelphia* (1950), 363 Pa. 512, 522, 70 A.2d 640, 645–646. See, also, Fordham & Mallison, *supra,* at 222, 245–247. For instance, in contrast to the Ohio Supreme Court's holding in *Benua, supra,*[4] the Pennsylvania courts have rejected municipal taxation of rents derived from buildings within the city. *Breitinger, supra; Murray v. Philadelphia* (1950), 363 Pa. 524, 70 A.2d 647.

Second, the points made in the dissenting opinions of *Freedman* have much force. The net profits tax ordinance, on its face, makes no distinction between types of business association partners, be they general, limited, silent, or otherwise. Further, regardless of the amount of personal control over operations, the limited partner is definitely reaping benefits from conducting business within the city.[5] And, if limited partners could not be taxed, then limited partnerships would essentially have special tax-exempt status, which is not the case for any other business enterprise in the city.

---

**4.** In fact, the "earned" income concept was raised by the taxpayer in the common pleas court in *Benua v. Columbus* (1957), 76 Ohio Law Abs. 449, 451–452, 147 N.E.2d 148, 150–151, and was expressly rejected by the trial court. Neither the Franklin County Court of Appeals nor the Ohio Supreme Court discussed the concept on appeal. See *Benua v. Columbus* (1958), 109 Ohio App. 355, 11 O.O.2d 222, 152 N.E.2d 550, and *Benua v. Columbus* (1959), 170 Ohio St. 64, 9 O.O.2d 459, 162 N.E.2d 467.

**5.** There are several justifications for imposing income taxes on individuals and business, the most ubiquitous of which is the benefit theory. This theory posits that it is both fair and efficient to impose income taxes on those who can be fairly said to either consume municipal services or derive some benefit or protection from the municipality. Indeed, this theory has made its way into judicial opinions assessing the constitutionality of nonresident taxation. See Note, Municipal Personal Income Taxation of Nonresidents, *supra,* at 778–782, 786–798. See, also, *Angell v. Toledo* (1950), 153 Ohio St. 179, 41 O.O. 217, 91 N.E.2d 250, citing *Wisconsin v. J.C. Penney Co.* (1940), 311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267; *McConnell v. Columbus* (1961), 172 Ohio St. 95, 99, 15 O.O.2d 168, 171, 173 N.E.2d 760, 763; *Thompson v. Cincinnati* (1965), 2 Ohio St.2d 292, 297, 31 O.O.2d 563, 566, 208 N.E.2d 747, 751; *Columbus v. Firebaugh* (1983), 8 Ohio App.3d 366, 367, 8 OBR 478, 479, 457 N.E.2d 367, 368.

This latter point is ever the more significant in Ohio because of the passage of the 1957 Uniform Municipal Income Tax Act. Pursuant to the constitutional authority to limit municipal taxation despite municipal home rule power, the General Assembly enacted R.C. 718.01 to provide certain prohibitory and mandatory subjects of municipal income taxation when such taxes are imposed. See generally, Glander, The Uniform Municipal Income Tax Act (1957), 18 Ohio St.L.J. 489. Since its enactment, this statute has included a mandatory provision stating that no municipal corporation passing an income tax levy exceeding one percent " * * * shall exempt from such tax * * * the net profit from a business or profession." *Id.* at 492. If we were to construe the current Columbus income tax ordinance as defendant suggests herein, the local tax ordinance would plainly violate this mandatory state requirement, now contained in R.C. 718.01(D). We decline to do so. Rather, we should construe the local tax code consistently with the requirements of state law to the extent that this reasonably can be accomplished.

Accordingly, Section 361.19(c)(2) broadly allows for the taxation of the net profits of activities conducted in the city by nonresidents. Section 361.19(c)(3) provides a special rule for "associations," which, by virtue of Section 361.03, includes partnerships, limited partnerships, or any other unincorporated enterprises owned by two or more persons. Under 361.19(c)(3), only that portion of a nonresident partner's share as is derived from work done, services performed or rendered, and business or other activities conducted in the city is taxable. Defendant has not disputed in any fashion that his entire share of limited partnership income is derived from business operations of his partnership, which is located within the city of Columbus. Cf. *Columbus v. Newkirk* (Feb. 19, 1976), Franklin App. No. 75AP–378, unreported (nonresident physician failed to present evidence that losses from nonresident businesses were attributable to Columbus, so as to offset gains from business in the city). Indeed, even if the court were to accept defendant's argument that a limited partnership is tantamount to an investment, defendant cannot dispute that his professed investment in Columbus constitutes an undertaking conducted by him under the definition of "business" in Section 361.04.

While defendant insists that the term "conducted," used throughout the ordinance, is a limiting term denoting some active control, management, or services performed (in essence, invoking a sort of "earned" income concept), the term is not defined in the ordinance at all, let alone in this manner. To be sure, the term has a variety of usages, one of which signifies to "carry on"

some endeavor.[6]  In this sense, obviously the partnership carried on business in Columbus and defendant carried on investment there as well.

This particular construction of the ordinance is supported by other portions of the Net Profits Tax and the consequences of an alternative construction. For, in addition to taxation of all unincorporated enterprises by virtue of Section 361.19(c), the net profits of other enterprises such as corporations, estates, and trusts are subject to municipal income taxation under Section 361.19(d).

We therefore hold that the trial court erred in concluding that plaintiff could not tax the income in question under the Columbus City Code.  Hence, we turn to the next issue raised by the briefs.  That issue is whether the taxation of defendant's limited partnership income is expressly or impliedly preempted by the state laws concerning intangible income.

In addition to familiar constitutional limitations on the municipal taxing power, one limitation on the exercise of such power in Ohio is the doctrine of state preemption.  Pursuant to the home-rule provision of the Ohio Constitution granting municipalities the power of local self-government, municipalities may impose an income tax; however, this power is subject to limitations prescribed by the General Assembly.  *Williams v. Columbus* (1987), 40 Ohio App.3d 71, 73, 531 N.E.2d 1336, 1338; *Angell v. Toledo* (1950), 153 Ohio St. 179, 41 O.O. 217, 91 N.E.2d 250, paragraph one of the syllabus. Aside from express preemption by statute, a municipality may be prohibited from taxing a particular subject under the judicially created doctrine of implied preemption.  See *State ex rel. Zielonka v. Carrel* (1919), 99 Ohio St. 220, 124 N.E. 134.  Implied preemption occurs when the state has occupied a particular field of taxation.  See, *e.g., East Ohio Gas Co. v. Akron* (1966), 7 Ohio St.2d 73, 36 O.O.2d 56, 218 N.E.2d 608.

In accordance with this doctrine, in *Ohio Finance Co. v. Toledo* (1955), 163 Ohio St. 81, 56 O.O. 74, 125 N.E.2d 731, the Ohio Supreme Court held that the state property tax on intangibles, measured by income yield, prevented municipalities from imposing an income tax on the income received from intangibles.  However, defendant cannot rely on *Ohio Finance* or any theory of implied preemption in the present case.  The state property taxes on intangibles in R.C. 5707.03 and 5707.04 were phased out by enactment of

---

**6.**  For instance, Webster's New International Dictionary (2 Ed. 1934) 557, defines "conduct" as: "1. Act or method of conducting; guidance; * * * 2. Act or manner of carrying on, directing, or managing, as a business; management; direction.  * * * "

Am.Sub.H.B. No. 291 in 1983. The last year for such taxes was 1985.[7] Thus, the door was opened for this type of income taxation.

Because of this, the Uniform Municipal Income Tax Act was amended in 1986 by Am.Sub.S.B. No. 238. By this enactment, division (C) was added to R.C. 718.01 to prevent taxation of "intangible" income. This term was then defined in R.C. 718.01(D) as " * * * income of any of the following types: income yield, interest, dividends, or other income arising from the ownership, sale, exchange, or other disposition of intangible property including, but not limited to, investments, deposits, money, or credits as those terms are defined in R.C. Chapter 5701 of the Revised Code."

Nevertheless, the General Assembly also included a provision of temporary law in Section 3 of the Act, which clearly states:

"Notwithstanding section 718.01 of the Revised Code, as amended by this act, a municipal corporation that was permitted by virtue of its local ordinances to tax any type of intangible income on or before April 1, 1986, may continue to tax such intangible income received by a taxpayer through 1988, or in the case of a taxpayer whose municipal income tax liability is based on a fiscal year, intangible income received through the taxpayer's fiscal year ending in 1988."

■ Hence, contrary to defendant's contention, the 1986 amendment to the statute did not totally preclude or expressly preempt all municipal taxation of intangible income. Rather, Section 3 of the Act expressly allowed for such taxation in 1986 and 1987 if previously permitted by local ordinance. Thus, even if limited partnership income qualifies as intangible income under division (C) of the 1986 version of R.C. 718.01, it still could be taxable if it was previously subjected to municipal income taxation.

Did plaintiff previously permit municipal income taxation of intangible income? There is no evidence in this case to establish that the city collected such income from anyone. Therefore, we are left with the language of the ordinance itself which, during the period in question, contained the same operative language in Section 361.19(c) regarding limited partnership taxation that we have previously discussed above. As we previously concluded, this language would permit taxation of nonresident limited partnership income. Consequently, to the extent that such income is intangible income, it was permitted to be taxed prior to April 1, 1986. Accordingly, the 1986 version of R.C. 718.01(C) does not preclude taxation in this case and we hold that the trial court was in error in concluding that it did.

---

7. The only remaining state property tax on intangibles relates to dealers in intangibles, like investment companies. R.C. 5707.03(D) and 5725.13.

For the foregoing reasons, plaintiff's assignments of error are sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion and in accordance with the law.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG, P.J., and TYACK, J., concur.